1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

12

| | |
|---|---|
| ARTHUR GRAY,<br><br>                    Plaintiff,<br><br>         v.<br><br>COUNTY OF KERN,<br><br>                    Defendant. | Case No. 1:14-CV-00204-LJO-JLT<br><br>CORRECTED[1] MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.<br><br>(Docs. 20 & 21) |

13
14
15
16
17
18
19

20        Before the Court in the above-styled and numbered cause of action are the parties' cross-

21  motions for summary judgment. *See* Docs. 20, 21. The motions are appropriate for resolution

22  without oral argument. *See* Local Rule 230(g). Having considered the record in this case and the

23  relevant law, the Court will deny Plaintiff's and grant Defendant's motion.

## BACKGROUND

24

## I.    FACTUAL BACKGROUND

25

26        The following relevant facts come primarily from Plaintiff's Complaint ("Compl.," Doc. 1);

27  Plaintiff's Statement of Undisputed Material Facts ("PSUMF," Doc. 20-2); Defendant's Response

28  to Plaintiff's facts and Supporting Evidence (Doc. 25-2); Defendant's Separate Statement of

---

[1] This Corrected Memorandum Decision and Order corrects non-substantive (largely typographical) errors.

Undisputed Facts ("DSUMF," Doc. 21-2); Defendant's Statement of Additional Undisputed Material Facts ("DSAUMF," Doc. 25-2 at 28); Plaintiff's Reply to Defendant's Separate Statement (Doc. 22-1); as well as Plaintiff Arthur Gray's Declaration (Doc. 20-4, Ex. 2; and Doc. 22-6, Ex. 5) and Deposition (Doc. 22-5, Ex. 4); Declaration of Plaintiff's Expert, Paul Bishop (Doc. 20-5); Plaintiff's Expert Report (Doc. 22-11, Ex. 9); Declaration of Cindy Norville ("Norville Decl.," Doc. 21-3); KMC facility manager Ron Eyraud's Declaration (Doc. 21-4 and 25-4) and Deposition ("Eyraud Depo.," Docs. 20-16, Ex. 14; 22-7, Ex. 6; 26-6, Ex. 20).  The parties did not file a joint statement of undisputed facts. Nevertheless, there are some facts on which the parties agree. The Court hereinafter references these facts as found in the parties' separate statements (Docs. 20-2 and 25-2), by citing to Undisputed Material Facts ("UMF").

**A.  The Parties**

Plaintiff Arthur Gray ("Gray") is a paraplegic; he cannot stand or walk and has significant manual dexterity impairments. UMF ¶ 1. Gray uses a wheelchair for mobility. *Id.* ¶ 3. The parties agree that Gray is and at all times relevant herein was, a "qualified person with a disability" and a "physically disabled person" as those terms are defined under the American's with Disabilities Act (the "Act" or "ADA") and its implementing regulations. *Id.* ¶ 2.

Defendant County of Kern ("the County") is and, at all relevant times, was a public entity within the meaning of Title II of the ADA. *Id.* ¶ 4. The County owns, operates, controls, maintains and exercises dominion over the medical facilities known as the Kern Medical Center ("KMC") located in or about 1700 Mount Vernon Avenue in the City of Bakersfield, County of Kern, California. *Id.* ¶ 5. KMC is a 222 bed acute care teaching hospital. *Id.* ¶ 6. At all times relevant to this action, Defendant was a "public entity" within the meaning of Title II of the ADA. *Id.* ¶ 7.

**B.  Stipulated and Undisputed Facts**

The parties agree that Plaintiff alleges that the restrooms, showers, sinks, drinking fountains, and ramps from the parking lot to the entrance are not accessible. Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("PRDSUMF") ¶ 1, Doc. 22-1.

//

//

2

### C.  Disputed Facts

Plaintiff contends that KMC has undergone construction and/or alterations since January 26, 1992. PSUMF ¶ 8. Defendant challenges Plaintiff's conclusion as extrapolating from minor upkeep to mean that the entire medical center has undergone construction and/or alterations. Defendant contends that only discrete portions of the KMC have undergone construction and/or alterations since January 26, 1992. DSUMF ¶ 8.

### *Plaintiff's Visits to KMC*

Plaintiff asserts he has been a patient at KMC for decades. PSUMF ¶ 9. He alleges that he has visited the Medical Center "countless times" for numerous reasons, including obtaining emergency room services, primary care, orthopedic care, surgery, x-rays, and other medical services, including at least a dozen visits within the statutory period. *Id.* In contrast, Defendant contends that Plaintiff's medical records reveal that he has only visited KMC three times within the two-year period before the complaint was filed. DSUMF ¶ 9 (citing Norville Decl. ¶ 2). Plaintiff asserts that he "needs" to go to the Medical Center to service the computerized equipment in his abdomen when it malfunctions. PSUMF ¶ 10. Defendant counters that no reason exists for Plaintiff not to have his computerized equipment serviced elsewhere when it malfunctions. DSUMF ¶ 10.

According to Plaintiff, he visited KMC numerous times in September 2011 when his grandson was admitted to the Neo-Natal Intensive Care Unit ("NICU") shortly after birth for several days. PSUMF ¶ 11. On October 3, 2011, Gray was admitted to KMC for surgery and stayed in a patient room "for several days." PSUMF ¶ 12.

Plaintiff alleges that between the end of 2011 through 2013, he visited multiple areas of KMC on numerous occasions, both as a patient and as a visitor. PSUMF ¶ 13. These visits included as a patient for surgery follow-up visits to a doctor and emergency room visits, as well as visits to friends and family who were admitted patients. *Id.* Between October 2011 and August 2014, Gray was deterred from visiting KMC on approximately fifty (50) occasions. PSUMF ¶ 14. Approximately twenty (20) of those visits were times Gray requested the ambulance he had called divert away from KMC. PSUMF ¶ 15.

### *Encounters with Barriers in Patient Rooms*

3

1  According to Plaintiff, while admitted as a patient, he encountered inaccessible conditions in

2  patient rooms. PSUMF ¶ 16. Defendant asserts that there is no evidence that Plaintiff stayed in a

3  room with such conditions – Plaintiff merely mimics the alleged barriers listed by his expert but did

4  not identify these issues in his complaint. DSUMF ¶ 17-21.

5  ***Three Public Lobby Restrooms***

6  As to Plaintiff's encounters with barriers while visiting KMC, he alleges he has encountered

7  inaccessible conditions in three public restrooms (1) the East Lobby Men's Restroom; (2) the West

8  Lobby men's Room, and the South Lobby Restroom. PSUMF ¶¶ 22-25.

9  ***Second Floor Unisex Restroom***

10  Plaintiff identifies barriers in the "2ⁿᵈ Floor Public Restroom," and the parties agree that this

11  identifies the Second Floor Surgery Clinic West Unisex Restroom ("the unisex restroom"). PSUMF

12  ¶ 26; Eyraud Decl. at ¶¶ 5-8. In his summary judgment motion, Gray alleges that he encountered

13  numerous barriers there. PSUMF ¶ 26.

14  ***Slopes and Ramps***

15  While visiting KMC, in his summary judgment motion Gray contends that he encountered

16  excessive slopes and cross slopes on the ramps leading into and out of KMC, as well as on exterior

17  paths. PSUMF ¶¶ 29-32. Defendant contends there is no record evidence that Plaintiff encountered

18  these conditions, he only repeats his expert's findings. *Id.*

19  ***NICU Sink***

20  Plaintiff also asserts that while visiting his grandson in KMC's NICU, he encountered sinks

21  that are only operable using foot pedals. PSUMF ¶ 33. In his summary judgment motion he includes

22  additional specific barriers. PSUMF ¶¶ 34, 35.

23  ***Drinking Fountains***

24  Plaintiff contends that while visiting KMC, he encountered drinking fountains that are

25  inaccessible and too high to access in his wheelchair. PSUMF ¶ 36. He identifies additional barriers

26  related to the sinks in his summary judgment motion. . PSUMF ¶¶ 37-39.

27  ***Other Barriers***

28

In his summary judgment motion, for the first time, Plaintiff asserts that medical staff was not available for assistance, explaining that when faced with barriers, he was denied assistance from KMC staff on every occasion he requested help. PRDSUMF ¶ 12.

Defendant asserts generally that KMC is accessible, personal assistance is available at all times, and wheelchair users regularly patronize KMC with no access issues. DSUMF ¶ 14, 17.

### Plaintiff's Use of the Facility

Plaintiff contends that he has been a patient at KMC for decades, having visited KMC countless times to obtain emergency room services, primary care, orthopedic care, surgery, x-rays and other medical services, including at least a dozen visits within the statutory period. PRDSUMF ¶ 3. Plaintiff asserts that he "will need to go to the Medical Center in the future to service the computerized equipment in his abdomen when it malfunctions." *Id.* Gray has, and will again, visit friends and family admitted to KMC. *Id.* For instance, in July 2014, Gray was admitted to KMC for surgery. *Id*. Also, he may be diverted to KMC's emergency room in the future if his preferred providers are unable to accept him. *Id.*

Defendant counters that it is Plaintiff's testimony that he no longer patronizes KMC and has no plans to return there. DSUMF ¶ 3. Defendant asserts that Medical staff was available to assist Plaintiff to overcome any limitations he may have as a result of his disability such as opening doors for him, getting him a drink of water, helping him use the restroom, bathing him, and/or assisting him up any ramps. DSAUMF ¶ 8; Doc. 21-3 at ¶ 4.

### Deterrence

Plaintiff contends that he has been deterred from seeking treatment at KMC because of the repeated barriers and obstacles he faced during his visits. PSUMF ¶ 47. Once the barriers are removed, he alleges, Gray will return and continue to visit and access the various medical facilities at KMC as and when the need arises. *Id.* Also, Defendant asserts that this is contrary to Plaintiff's testimony that he has no plans to return to KMC. DSUMF ¶ 47.

### Construction History

Defendant asserts that Plaintiff does not have any information regarding the construction/alteration history of the alleged barriers. DSUMF ¶ 2 (Doc. 21-2). Defendant asserts

that KMC was originally built long before 1992. DSUMF ¶ 5. Without addressing when KMC was originally built, Plaintiff counters that KMC has undergone at least 77 major and minor alterations and construction projects since 1995. PRDSUMF ¶ 2, 5. For example, the "E" Wing, which houses the Emergency Room, was wholly constructed between 1997 and 2000. PRDSUMF ¶ 2, 5.

It is undisputed that KMC was originally built long before 1992. DSAUMF ¶ 1. Since then only discrete portions and features of KMC have been modified or undergone construction. *Id*. There are accessible restrooms and an accessible shower that comply with current ADA standards. DSAUMF ¶ 2; Doc. 21-4 at ¶ 14.

### *Facility Management*

The parties agree that KMC Facility Manager, Ron Eyraud ("Eyraud"), was identified as Defendant's person most qualified to testify as the history of modifications made to the Medical Center over the last five years. PSUMF ¶ 43; DSUMF ¶ 43. Defendant agrees that Eyraud has never designated any accessibility modifications an undue burden. PSUMF ¶ 46; DSUMF ¶ 47.

### *Present ADA Compliance*

Defendant offers that the barriers about which Plaintiff complains have been remediated. Recently, Defendant conducted a comprehensive accessibility survey that confirmed KMC is now accessible. DSAUMF ¶ 10; Doc. 21-4 at ¶ 5. For example, as to the alleged barriers in the two restrooms Plaintiff complains about in his complaint, one near the cafeteria and the other on the second floor,[2] both bathrooms presently meet current ADA standards. DSAUMF ¶ 3; Doc. 21-4 at ¶ 5. The operable parts of the soap dispensers, the toilet seat cover dispensers, and all other dispensers in these restrooms are currently located less than 40 inches from the ground. DSUMF ¶ 7.

Two additional restrooms located near the restrooms Plaintiff complains about also presently meet current ADA standards. DSAUMF ¶ 4; Doc. 21-4 at ¶¶ 6-7. The ramps leading in and out of the main public entry into the hospital presently meet current ADA standards. DSAUMF

---

[2] The Court adopts Defendant's undisputed understanding that Plaintiff's description of a public "restroom near the cafeteria" identifies "the one located on the first floor, C wing, also called the South lobby restroom, which is near the cafeteria and was inspected by plaintiff's expert." Doc. 21-4, Eyraud Decl. ¶ 8. Also, that by referring to the "public restroom on the second floor," Plaintiff identifies "the second floor surgery clinic West unisex restroom, which was inspected at plaintiff's direction by plaintiff's expert." *Id.*

¶ 5; Doc. 21-4 at ¶ 10. In the NICU, the sinks about which Plaintiff complains now operate with a hands-free, motion sensor faucet. DSAUMF ¶ 6; Doc. 21-4 at ¶ 12. Of the KMC drinking fountains, at least three drinking fountains at KMC presently meet current ADA standards. DSAUMF ¶ 7; Doc. 21-4 at ¶ 13.

In addition, Defendant asserts that there are numerous patient rooms with restrooms and showers that presently comply with current ADA standards. DSUMF ¶ 6. In the patient rooms, the entry and stall doors require less than five pounds of pressure to operate. *Id.*

Plaintiff contends that as of April 20, 2015, the date of Eyraud's deposition, Eyraud either did not know or did not believe most of the violations alleged in Plaintiff's complaint had been remediated. PRDSUMF ¶¶ 6-11. Plaintiff highlights Eyraud's testimony that to his knowledge at that time there were no immediate plans to do any remediation, nor were there any policies and procedures in place to ensure ADA compliance. *Id.* On the same date, Eyraud did not know if any restrooms were or had been made accessible, nor did he know the poundage required to open most doors at KMC. PRSDUF 7, 8. Also on this date, Eyraud either did not know, or did not believe, that the ramps had been remediated. PRSDUF 9. Eyraud also testified at that time that the NICU sinks at that time still had foot pedals. PRSDUF 10.

Defendant counters that Eyraud's testimony in April 2015 predates the remediation efforts about which Eyraud subsequently testified on August 25, 2015. *See* Eyraud Decl. at ¶¶ 5-8.

## II.    PROCEDURAL BACKGROUND

Plaintiff filed the instant action on February 13, 2014 (Doc. 1). The Scheduling Order (Doc. 8) set August 15, 2014 as the deadline for amending the pleading. Although Plaintiff noted that he would seek leave to amend after his expert's investigatory visit to KMC, *see* Compl. at 3:15-17, Plaintiff has neither amended his complaint nor requested leave to do so. Plaintiff's initial filing therefore remains the operative complaint.

The parties timely filed their motion for summary judgment on August 25, 2015 (Docs. 20, 21). On September 8, 2015, Plaintiff filed an Opposition to Defendant's motion (Doc. 22), to which Defendant filed a Reply on September 15, 2015 (Doc. 23). On September 22, 2015, Defendant filed

an Opposition to Plaintiff's motion (Doc. 25), to which Plaintiff filed a Reply on September 29, 2015 (Doc. 26). The parties efiled objections[3] to opposition evidence.[4]

The cross-motions for summary judgment are now ripe for review.

## LEGAL STANDARD

Cross motions for summary judgment are evaluated separately under the same standards that apply to single summary judgment motions. *See Pintos v. Pacific Creditors Ass'n*, 565 F.3d 1106, 1111 (9th Cir. 2009); *ACLU v. City of Las Vegas*, 466 F.3d 784, 790 (9th Cir. 2006).

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Id.* at 984. In contrast, if the nonmoving party will

---

[3] The parties interpose several objections to evidence presented, both within the various statements of fact and in stand-alone objection memoranda. (Docs. 23-1 &25-1). The Court need not address these objections because in ruling on the parties' cross motions it does not consider the materials to which the parties object. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).

[4] The Court notes that the parties have, respectively, demonstrated lapsed diligence, such as failing to meet and confer to produce a joint statement of undisputed facts.

have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.*, at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts") (citation omitted). "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Liberty Lobby*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## DISCUSSION

Plaintiff, a paraplegic who uses a wheelchair for mobility, both visited and was admitted to KMC between February and October 2011. Arising out of his experiences encountering architectural barriers which impeded his ability to enjoy fully and access the hospital facilities at KMC as a patient and visitor, Plaintiff alleges three causes of action: (1) violations of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq. (first cause of action); (2) violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (second cause of action); and, (3) a state-law claim arising under the California Disabled Persons Act ("CDPA"), California Civil Code Section 54 *et seq.* (third cause of action).

In his complaint, Gray alleges five architectural barriers: (1) inaccessible restroom facilities in patient rooms; (2) two inaccessible public restrooms, one near the cafeteria and the other on the second floor, with incorrectly mounted amenities; (3) excessive slopes on ramps leading into and out of the medical center building; (4) sinks in the NICU are only operable using foot-pedals; and, (5) drinking fountains are "too high." *See* Compl. ¶ 20.

## I.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### First Cause of Action: Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 et seq.

Plaintiff avers that Defendant's acts and omissions excluded and/or denied Plaintiff the benefit and use of the Medical Center, in violation of Title II and its implementing regulations. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To state a claim of disability discrimination under Title II, a plaintiff must show that "(1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of his disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (citing *Weinreich v. Los Angeles Co. Metro. Transp. Authority*, 114 F.3d 976, 978 (9th Cir. 1997)).

Here, as the parties agree that Plaintiff is disabled within the meaning of the ADA and that KMC is a place of public accommodation, only the third prong is at issue. The question is whether a plaintiff was denied public accommodations on the basis of his disability; a court answers in the affirmative if there was a violation of applicable accessibility standards. *See, e.g., Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011); *Donald v. Cafe Royale*, 218 Cal. App. 3d 168, 183 (1990).

### Second Cause of Action: Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

Plaintiff avers that Defendant violated the ADA, and thus there is also a per-se violation of the Rehabilitation Act. Section 504 of the Rehabilitation Act provides that "no otherwise qualified

1    individual with a disability in the United States . . . shall, solely by reason of his or her disability, be

2    excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

3    any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a); 34 C.F.R. §

4    104.4(a). 35. The parties agree that Defendant receives "federal financial assistance" in the form of

5    federal grants and loans, pursuant to 45 C.F.R. § 84.3(h), and Plaintiff is a disabled person within

6    the meaning of 29 U.S.C. § 794a.

7    **A.  THRESHOLD ISSUES**

8    **Statute of Limitations**

9    The parties disagree about the limitations period but do not adequately brief the topic. As the ADA

10   has no statutory limitations period, the Court defaults to the most closely analogous state law's

11   limitations period. *Wilson v. Garcia*, 471 U.S. 261, 266-71 (1985).  Here, California civil rights

12   actions, which have a three-year statute of limitations, are most closely analogous. *See, e.g.*

13   *Kemp v. Regents of Univ. of Cal.*, 2010 WL 2889224, at *7 (N.D. Cal. July 22, 2010) ("In the

14   absence of any definitive ruling from the Ninth Circuit or the California Supreme Court, and given

15   the California Court of Appeal's analysis in *Gatto* [*v. County of Sonoma*, 98 Cal. App. 4th 744

16   (2002)], the court finds that California's three-year statute of limitations for statutory violations

17   should apply to plaintiff's claim under Title II of the ADA."); *see also Brown v. Napa Valley Sch.*

18   *Dist.*, 2012 WL 1831539, at *9 (N.D. Cal. May 18, 2012) (finding that "a three-year statute of

19   limitations applies to the Plaintiff's ADA claim"). Therefore, the Court concludes that in the instant

20   case, the limitations period is between February 13, 2011 and the date Plaintiff filed the instant suit,

21   February 13, 2014.[5]

22   **Standing**

23   Defendant argues that Plaintiff's lack of standing[6] is fatal to his claims. *See* Doc. 21-1 at 5-

24   7. Defendant avers that because Plaintiff offers speculation but no concrete, particularized intent to

25

---

26   [5] While this general conclusion is relevant to the standing discussion, the Court defers its evaluation of whether specific, viable claims fall within the limitations period to a later point in this Order because many of the specific claims fail on

27   other grounds.
     [6] "Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that

28   controversy is what has traditionally been referred to as the question of standing to sue." *Sierra Club v. Morton,* 405 U.S. 727, 731-32 (1972).

visit KMC in the future, *see* Doc. 21-1 at 6:15-20, he does not set forth facts sufficient to satisfy

Article III standing requirements. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564

(1992) (finding general promises to return in the future or conditional promises are insufficient to

confer standing, stating that "'some day' intentions – without any description of concrete plans, or

indeed even any specification of when the some day will be – do not support a finding of the 'actual

or imminent' injury that our cases require"). Defendant also contends that Plaintiff lacks standing

for any restroom-related claims because he does not use public restrooms. *See* Doc. 21-1 at 8-9.

Plaintiff counters that despite admittedly having the option of completing some personal

care and hygiene in his specially adapted van, he attests that he has used both public and patient-

room restrooms at KMC, encountering barriers there. *See* Doc. 22 at 16:7-16. And, according to

Plaintiff, he intends to return to KMC. Gray admits that "due to the lack of accessibility at KMC, he

prefers to go to the Emergency Rooms at Bakersfield Memorial Hospital and San Joaquin

Community Hospital." Doc. 22 at 16:17-20. However, he contends that he may be forced to return

because "sometimes he has no choice of Emergency Rooms . . . [when a preferred] ER is full

they'll send [him] to KMC." Doc. 22 at 16:18-21. Plaintiff concedes, however, that this has never

actually happened. *Id*. While Plaintiff admits that Gray testified that he would not return to KMC,

he emphasizes that "he was only referring to the Emergency Room." *Id.* at 17:4-5. Plaintiff alleges

that since experiencing inaccessible facilities on prior visits he has been deterred from visiting

KMC "approximately 50 times since October 2011." *Id.* at 17:14-15. Of these fifty times, "on

approximately 20 occasions," he directed ambulance services to avoid KMC, thus, he argues, the

corresponding dates on which he was admitted at different hospitals on those occasions illustrate

particular instances when Gray was deterred from KMC. *Id.* at 17:19-22. Moreover, Plaintiff asserts

that he "*must* go to KMC to service computerized equipment in his abdomen," and was most

recently there in July 2014 for that purpose. *Id.* at 17:5-8.

It is well-established that "those who seek to invoke the jurisdiction of the federal courts

must satisfy the threshold requirements imposed by Article III of the Constitution by alleging an

actual case or controversy." *Chapman*, 631 F.3d at 946 (quoting *City of Los Angeles v. Lyons*, 461

U.S. 95, 101 (1983)); *see also D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1036

(9th Cir. 2008) ("A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution; standing is a 'core component' of that requirement." (quoting *Lujan*, 504 U.S. at 560)). Despite the ADA's "sweeping" purpose, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001), and its "comprehensive" mandate, 42 U.S.C. § 12101(b)(1), its reach is also bound by the limits of standing. *Chapman*, 631 F.3d at 946 ("the ADA's reach is not unlimited").

To determine whether a sufficient case or controversy exists sufficient to give rise to jurisdiction, it is plaintiff's burden to demonstrate three basic elements: (1) an "injury in fact," one which is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical," (2) a causal link between the alleged injury and offensive conduct; and (3) that it is beyond speculation that "the injury will be redressed by a favorable decision." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (internal quotation and citations omitted) (quoting *Lujan*, 504 U.S. at 560-61). When private enforcement suits "are the primary method of obtaining compliance" with a civil rights act, such as the ADA, courts must take a "broad view of constitutional standing." *Id.* (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

The parties do not dispute the second and third prongs, thus the Court turns to the first prong, injury in fact. On this issue, Defendant makes the following three arguments about: (1) an apparent lack of an actual concrete injury to Plaintiff; (2) the lack of imminent threat of injury; and, (3) unencountered barriers.

1. Concrete Injury

In *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002), one of the disabled plaintiffs, Doran, argued that being deterred from going to an ADA non-compliant store constitutes an injury in fact. The court found that "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." Doran visited the store twice. On the first visit he encountered barriers, and he was deterred from entering the store on the second visit, and instead waited in the parking lot while his companion went in on his behalf. *Id.* at 1136. Taking Doran's allegations as true, the circuit court

13

found, "he has suffered and is suffering an injury within the meaning of Title III of the ADA," *Id.* at 1137, and held that "in stating that he is currently deterred from attempting to gain access to the [ ] store, Doran has stated sufficient facts to show concrete, particularized injury." *Id.* at 1137-38. Moreover, by stating that he preferred to shop at the store and would shop there again if it was accessible to him, "is sufficient to establish actual or imminent injury for purposes of standing." *Id.* at 1138.

> More recently, in *Doran*, the Ninth Circuit interpreted *Pickern* to mean:
>
> > that if a plaintiff can show either that he was deterred from visiting the accommodation on specific past occasions when he otherwise would have visited it because of the known barriers there, or that he was deterred from patronizing certain areas of the accommodation or engaging in specific activities there because of those barriers, he has established an injury in fact sufficient for purposes of Article III standing under *Pickern*.

*Doran*, 524 F.3d at 1041.

Beyond acknowledging the basic three-prong test, Defendant does not address *Pickern* or *Doran* in its briefing. *See* Doc. 23:10-15. Instead, Defendant argues that hypothetical future hospital visits are inadequate to confer standing and in support of this proposition cites numerous out-of-circuit cases. The lone case Defendant cites from within the Ninth Circuit, *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160 (C.D. Cal. 2005), is easily distinguished on its facts. In *Molski*, the plaintiff's basis for standing was a single visit. *Id.* at 1164. The court resolved that dismissal was appropriate because "the lack of a history of past patronage seems to negate the possibility of future injury at that particular location." *Id.* This is not at all similar to the instant case, where – despite disagreements over exact dates and locations of stay – the parties acknowledge Plaintiff's history as a patient at KMC over a span of years.

Ultimately, Defendant does not meaningfully challenge that Plaintiff encountered an alleged barrier at KMC during the limitations period.[7] Specifically, Plaintiff testified that he was admitted to KMC in October 2011, a stay during which he encountered a non-accessible patient-room bathroom. And, Plaintiff testified that, on numerous occasions, he encountered entry ramps, water fountains, and public bathrooms that posed accessibility problems for him. Based on his

---

[7] The Court, *supra*, determined that a three year statute of limitations period applies. *See, e.g. Kemp*, 2010 WL 2889224, at *7; *see also Brown*, 2012 WL 1831539, at *9.

experiences at KMC, Plaintiff subsequently avoided the hospital on numerous occasions because, he testified, the non-compliance barriers served as a deterrent. Thus Defendant's argument fails.

### 2.   Imminent Injury

Defendant next argues that there is no real threat of imminent harm because Plaintiff's return to KMC is merely speculative. Defendant asserts that Plaintiff's deposition testimony establishes he no longer patronizes KMC and has no plans to return there. DSUMF ¶ 3.

Plaintiff must demonstrate a "real and immediate threat of repeated injury" in the future. *Chapman*, 631 F.3d at 946 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). However, to do so, a plaintiff may demonstrate an imminent injury in one of two ways, either: (1) a likely reencounter, in that he both intends to return to the noncompliant facility and when there in the future is likely to reencounter the identified barriers; **or**, (2) that he is deterred from returning to the noncompliant facility because of the barriers. *Id.* at 949.

These two options mean that Defendant's focus on the likelihood of Gray's return, even if true, is insufficient to defeat Plaintiff's standing. And, in its briefing, Defendant fails to address the record evidence illustrating Plaintiff's deterrence, the second path to demonstrating an imminent injury.

For these reasons, and viewing Plaintiff's facts in a light most favorable to him at this stage, the Court finds that his testimony about being deterred from going to KMC because of the barriers he encountered there is enough to demonstrate an ongoing injury for the purposes of Article III standing. The Court concludes that, as in *Pickern*, the evidence meets the Ninth Circuit's threshold for a "particularized" and "imminent" injury, in that it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1; *see also Doran*, 524 F.3d at 1041 n. 4 (holding that a plaintiff establishes an injury in fact if he can show "that he was deterred from visiting the accommodation on specific past occasions when he otherwise would have visited it because of the known barriers there").

### 3.   Encountered and Unencountered Barriers

Throughout Defendant's motion and its opposition, it repeatedly argues that Plaintiff does not have standing in relation to those barriers he has not actually encountered. For all but one, the

Court is unpersuaded. Defendant does not dispute that Plaintiff claims that he encountered at least one alleged barrier. And, "as long as the plaintiff has encountered one barrier, he may seek relief for unencountered barriers." *Curtis v. Home Depot U.S.A., Inc.*, 2015 WL 351437, at *3 (E.D. Cal. Jan. 23, 2015) (citing *Chapman*, 631 F.3d at 944). The Ninth Circuit in *Chapman* synthesizes the relevant principles:

> We have held that [a]n ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability. Under *Doran*, Chapman need not have personally encountered all the barriers that impede his access to the Store in order to seek an injunction to remove those barriers. If Chapman has standing to pursue injunctive relief as to some of the barriers that he actually encountered, then he has standing to seek an order requiring the removal of all barriers at the Store that are related to his disability and that he is likely to encounter on future visits.

*Chapman*, 631 F.3d at 950-51 (internal quotations, citations, and footnotes omitted).

Under *Chapman*, it is a plaintiff's burden to demonstrate that an architectural barrier is related to a plaintiff's disability and is one the plaintiff is likely to encounter in the future. Of the five barriers acknowledged in the complaint, one stands apart. On one hand, Plaintiff offers evidence that based on his history with KMC it is likely that he would return, and in so doing would likely encounter: (1) ramps to enter the building, (2) public restrooms near the cafeteria and lobby; (3) water fountains in the building; and, (4) based on record evidence showing Plaintiff's medical history and pattern of hospital care at KMC, it is even reasonably foreseeable that he would return to a patient room at KMC. In contrast, it is mere speculation that in the future Plaintiff would have occasion to visit or use the neo-natal unit, an area unrelated to Plaintiff's disability. Plaintiff offers no evidence to support a likely return. Plaintiff admits that he visited only once to see a newborn grandson who was then a patient receiving specialized care. There is no evidence before the Court demonstrating that Plaintiff is likely to encounter the neo-natal unit on future visits.

The Court concludes that Plaintiff has standing to challenge encountered and unencountered architectural barriers to access, with the exception of those barriers he claims to have encountered (sinks) in the neo-natal unit. To the extent that Plaintiff seeks standing for the NICU sinks, the Court **GRANTS** Defendant's motion.

**Notice Requirement**

Defendant argues that to give fair notice under Federal Rule of Civil Procedure 8 ("Rule 8"), Plaintiff's claims are limited to those identified in the complaint, citing *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011). *See* Doc. 21-1 at 9-10. Because Plaintiff included additional barriers for the first time in the expert report and his summary judgment motion, the argument goes, Plaintiff did not give Defendant fair notice that these other barriers were grounds for his discrimination claim under the ADA.

   1. Barriers Are Limited to Those Included in the Complaint

The question is whether the architectural barriers allegedly found by Plaintiff's expert, and to which Plaintiff refers in his summary judgment motion, are sufficiently described in the complaint pursuant to Rule 8. Under Rule 8, "a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere." *Oliver*, 654 F.3d at 909. This is not a close call. In both Plaintiff's motion for summary judgment (Doc. 20) and his opposition to Defendant's motion for summary judgement (Doc. 22), he enumerates barriers discovered by his expert subsequent to filing the complaint. *See* Pl. Expert Report, Doc. 20-11. It is about these new barriers, described for the first time in the expert report, that Defendant primarily argues that notice is insufficient. The record reflects Plaintiff's lack of diligence in amending his complaint, despite suggesting that he believed additional barriers existed and that these, "will be confirmed by Plaintiff through a noticed site inspection. At that time, Plaintiff will amend his Complaint." Compl. ¶ 22.

Plaintiff completed the noticed site inspection. However, Plaintiff did not actually amend the complaint, nor did Plaintiff at any time seek the Court's leave to amend. In other words, Plaintiff's initial filing remains the operative complaint. The originally filed complaint includes no information about barriers later discovered by Plaintiff's expert, therefore, the Court will not consider them. *Id.*

*//*

*//*

17

2.   Barriers in Complaint

The Court turns to whether those barriers included in the complaint are sufficient to provide notice to Defendant. Under Rule 8, a civil complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Ninth Circuit articulated the relevant standard in *Oliver*:

> The Supreme Court has interpreted the "short and plain statement" requirement to mean that the complaint must provide "the defendant [with] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Where the claim is one of discrimination under the ADA due to the presence of architectural barriers at a place of public accommodation, we have held that the relevant "grounds" are the allegedly non-compliant architectural features at the facility. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006). Thus, in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint. *See id.*
>
> In *Pickern*, for example, the plaintiff's complaint listed a number of barriers that were "illustrative of the kinds of barriers a disabled person may confront," but did not allege that any of those barriers existed at the facility in question. *Id.* at 968-69. We held that such a complaint does not provide a defendant with fair notice concerning the grounds upon which the plaintiff bases the claim of discrimination because it does not identify the specific barriers for which the plaintiff seeks injunctive relief. *Id.* at 969. Nor was the plaintiff's expert report identifying the barriers at the facility sufficient to constitute "fair notice" under Rule 8 because it did not specify "what allegations [the plaintiff] was including in the suit" and was "not filed and served until after the discovery deadline." *Id.*

*Id.*, 654 F.3d at 908.

In his motion for summary judgment, Plaintiff presents numerous bases for recovery. He enumerates far fewer in his complaint, describing only five "ongoing and continuous architectural barriers" at KMC, of which four remain relevant to this inquiry. *See* Compl. ¶ 20. The Court compares the alleged noncompliant barriers alleged in the complaint to those alleged in the summary judgment motion, and evaluates the sufficiency of each in turn.

a.   Patient Room Bathrooms

In his motion for summary judgment, Plaintiff seeks to use as grounds for his claim barriers in patient room bathrooms, as follows:

18

The strike side clearance was a foot short. The foot-pedal operated sinks were unusable without risk of injury to wheelchair users. The restroom door was too narrow, and the grab bars were nonexistent. Mr. Gray encountered these conditions both in October 2011 and in July 2014.

*See* Doc. 20 at 13:11-15.

However, the complaint states only that the offending characteristics of the patient-room bathrooms are "[i]naccessible and unusable restroom facilities and showers in patient rooms." This broad statement is a legal conclusion. The statement does not identify any specific barriers for which the plaintiff seeks injunctive relief. The Court concludes that the statement is insufficient to satisfy Rule 8.

### b.   Public Restrooms

Rather than the two bathrooms identified in the complaint, Plaintiff's motion for summary judgment suggests problems with "numerous" public restrooms. Doc. 20-1 at 13:20-21. Plaintiff also lists problems about urinals, toilet locations, mirrors and soap dispensers being too high "throughout the facility," inadequate toilet compartments, and the lack of grab bars and pipe insulation. *Id.* Yet Plaintiff identifies only two public restrooms in his complaint, and describes barriers in these as, "among other things," having "incorrectly mounted amenities," such as "soap, toilet seat covers, etc.," and "the doors require excessive pressure to open." Compl. ¶ 20.

The Court finds that Plaintiff's statements about mounted amenities and door pressure serve to identify specific barriers in the two bathrooms for which Plaintiff seeks injunctive relief, thus satisfy Rule 8. However, the "numerous" public restrooms and related barriers (the urinals, toilet locations, mirrors, toilet compartments, slopes within the compartment, grab bars, and water pipes) are not included in the complaint and thus do not satisfy Rule 8's notice requirement.

### c.   Slopes and Ramps

As to slopes and ramps, Plaintiff's motion also includes new barriers absent from the complaint, including "exterior pathways," "curb ramps," "paths of travel," "gutters," "landings," and the absence of "adequate handrails" or a connection between buildings by "circulation path," as well as corresponding details about slope. Doc. 20-1 at 14-15. The motion also includes new

geographic descriptions, such as "ramps leading to the West Lobby and Patient Financial Office." *Id.* at 15:1.

In contrast, Plaintiff provides scant details in the complaint, stating only that "[e]xcessive slopes and cross slopes on the ramps leading into and out of the Medical Center building." Compl. ¶ 20. By doing so, Plaintiff neither indicates the ramps' locations relative to the KMC campus, nor to which of the many KMC buildings he refers. Defendant is left to guess their location and specific barriers related to Plaintiff's disability. Under Rule 8, the pleading relative to slopes and ramps is insufficient to provide notice to Defendant as to the basis of Plaintiff's claim.

### d.   Drinking Fountains

In his summary judgment motion, Plaintiff includes the following information about drinking fountain noncompliance:

> . . . the fountains were too high for Mr. Gray to use and one lacked knee clearance. When he asked for a cup to accommodate this, he was told none were available. Where ambulatory individuals could make easy use of the fountains, Mr. Gray was forced fashion a cup out of a piece of paper.

*See* Doc. 20 at 16:13-17. However, the facts alleged in the complaint are only that "[d]rinking fountains are inaccessible and too high for Plaintiff to access in his wheelchair." Compl. ¶ 20.

The statement that drinking fountains are inaccessible is a legal conclusion. In addition, absent from the statement is any descriptive information about the location of the alleged barriers. KMC's medical campus is large. As Plaintiff notes: "KMC is an enormous facility. It spans four floors and five wings, not including auxiliary buildings and clinics surrounding it. The Fourth Floor "A" wing, one of the smaller wings on the smallest floor, has over 35 rooms." Doc. 22 at 20:16-20. Yet Plaintiff fails to identify in his complaint – or even in his motion for summary judgment – the noncompliant fountain's location. Nor does he clarify whether he means to use as the basis of his claim the single encountered drinking fountain, or all KMC drinking fountains. Even if Plaintiff alleges that all KMC drinking fountains are noncompliant, he fails to explain if these share identical noncompliance issues globally in the facility. And, if, instead, Plaintiff means to identify only a solitary encountered drinking fountain, he provides no information in the complaint about where that fountain is. Defendant is left to guess. For these reasons, the Court finds that Plaintiff has not

identified a barrier in connection with drinking fountains and thus has not satisfied Rule 8 for the purposes of an ADA claim.

In sum, just as Defendant is left to guess if that single fountain or a hundred fountains is the basis for Plaintiff's claim for injunctive relief, Defendant is left to guess the location of the "numerous" bathrooms, patient rooms, ramps, slopes, and other generally described features at the KMC campus. Plaintiff failed to amend his complaint to include factual allegations of barriers discovered by his expert and included in the expert report. The parties agree that the KMC campus consists of a network of several buildings, no fewer than six wings, and approximately 200 patient rooms. *See* KMC Campus Site Plan, Doc. 22-4, Pl. Ex. 3. Descriptions of alleged barriers in the complaint provide no actual information to suggest where the offending "restroom facilities, "showers in patient rooms," ramps, slopes, or drinking fountains are in the KMC complex. The majority of barriers Plaintiff raises for the first time on summary judgment were not mentioned as a basis for his causes of action in the complaint. *See generally* Compl., Doc. 1. Even if he did, in every instance the allegations in the complaint– save those in relation to the two public bathrooms (mounted amenities and door pressure) – fail to specify barriers with any particularity. It is worth repeating that Plaintiff did not seek leave to amend to include the allegations from the expert report. Bypassing that step amounts to bypassing the opportunity to give Defendant proper notice. Finally, mixed in an argument on another issue, Plaintiff concedes that "he is limited to seeking injunction and/or damages on the many violations included in his Complaint." Doc. 22 at 18:16-17.

Thus, to the extent Plaintiff's claims are based on the allegations identified only in Plaintiff's summary judgment motion, Defendant is entitled to summary judgment on those aspects of Plaintiff's ADA claim under Rule 8. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d at 968 (affirming trial court's decision to disregard plaintiff's newly asserted ADA violations at the summary judgment stage because it would violate Rule 8's fair notice requirement). This comports with circuit precedent demonstrating that it is improper for a plaintiff to use summary judgment to proffer allegations that were not adequately made in the complaint. *See, e.g., Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such

1   claim in a summary judgment motion is insufficient to present the claim to the district court.");

2   *accord Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply

3   put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.")

4   (citation and internal quotation marks omitted).

5       After the Rule 8 analysis, two alleged barriers remain: (1) inaccessible mounted amenities,

6   limited to dispensers in the two identified public bathrooms; and, (2)the high door pressure

7   surpassing the five pound maximum force required to open interior doors in those bathrooms.

8       **Mootness**

9       Defendant avers that Plaintiff's ADA claim for injunctive relief is moot because KMC has

10  remedied the alleged barriers to meet current ADA standards since Plaintiff's expert's investigatory

11  visit. *See* Doc. 25 at 11:21-27 (citing Docs. 21-4 & 23-2). Defendant posits that no genuine issue of

12  material fact therefore remains because Plaintiff has not returned to the facility to inspect since the

13  initial investigatory visit and, measurements taken before remedial measures do not create a

14  genuine issue of material fact. *See, e.g., Johnson v. Starbucks Corp.*, 2015 WL 877493, at *2-*3

15  (N.D. Cal. Feb. 27, 2015) (finding that Plaintiff's "testimony as to measurements taken over a year

16  beforehand does not create a genuine issue of material fact precluding summary judgment").

17      A disabled individual is entitled to a private right of action under the ADA for injunctive

18  relief for removal of noncompliant architectural barriers to make a facility "readily accessible." 42

19  U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(a)-(b). A private litigant is limited to injunctive relief and

20  in other words, "is not entitled to recover compensatory or punitive damages on such claim."

21  *Dodson v. Joseph Esperanca, Jr., LLC*, 2013 WL 6328274, at *2 (E.D. Cal. Dec. 4, 2013).

22      This limitation on available remedies in ADA cases works like a domino effect because if a

23  defendant voluntarily removes the alleged barriers, a plaintiff's ADA claim may be mooted. *See,*

24  *e.g., Johnson v. Cal. Welding Supply, Inc.*, 2011 WL 5118599, at *3 (E.D. Cal. Oct. 27, 2011)

25  ("Once a defendant has remedied all ADA violations complained of by a plaintiff, the plaintiff's

26  claims become moot and he or she loses standing, meaning the court no longer has subject matter

27  jurisdiction over the ADA claims.") (citing *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130-31

28  (C.D. Cal. 2005)).

If a court determines that a case is moot it tips the last domino; the court no longer has jurisdiction over the controversy. U.S. Const. art. III, § 2 (limiting jurisdiction of federal courts to actions where there exists an actual case or controversy); *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir. 1985) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.") (citing *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 72-73 (1983)). A defendant's "[v]oluntary cessation of challenged conduct moots a case, however, only if it is *'absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n., Inc.*, 393 U.S. 199, 203 (1968)).

### 1.   Determining Applicable ADA Standard

The parties agree that he main KMC medical building was built before 1992. As the barriers at issue are all in that building, the standards for applicable to each barrier are the same.

Generally, there are three categories of Title III accessibility standards: (1) the "new construction" provisions (applies to public accommodations built after January 26, 1992); (2) the "alteration" provisions (applies to a pre-1992 constructed building if, post-January 26, 1992 alterations occurred); and, (3) the "readily achievable" provisions (applies to unaltered portions of buildings built before January 26, 1992).[8]  *See Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011); *see also Chapman*, 631 F.3d at 945.

### 2.   Whether Defendant's Remediation Renders Moot Plaintiff's Claims

Here, because Plaintiff does not dispute that the main building at KMC was built long before 1992, the new construction provisions are inapplicable. The question is whether Defendant has remediated the barriers in compliance with the appropriate provision. Because Defendant argues that its remedial efforts of the identified barriers meet even the 1991 or 2010 ADA Accessibility Guidelines ("ADAAG" or "ADAAG standards") compelled under the "alteration" provision, the Court assumes, without deciding in this stage of its analysis, that the ADAAG standards apply to the challenged barriers.

---

[8] Title II does not include technical requirements for accessibility but instead refers to and incorporates Title III, which includes the 1991 Americans with Disabilities Act Accessibility Guidelines ("ADAAG"). *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1067 (9th Cir. 2010) (quoting legislative history in support of this proposition).

As to mounted dispensers in a restroom, ADAAG 4.2.6 only allows a maximum height of 54" and ADAS 309.3 only allows a maximum height of 48" for items such as mounted soap dispensers. According to ADAAG 4.2.5, if the high forward reach is over an obstruction, then, "[t]he maximum level forward reach over an obstruction with knee space below is 25 inches . . . . When the obstruction is less than 20 inches . . . deep, the maximum high forward reach is 48 inches . . . . When the obstruction projects 20 to 25 inches . . ., the maximum high forward reach is 44 inches." ADAAG 4.2.5, 4.25.3, Fig. 5b. On door pressure, ADAAG 4.13 and 4.23.2 only allow for five pounds of force as the maximum opening force requirement for an interior restroom door.

On August 15, 2015, KMC's facility manager, Eyraud, testified about his personal knowledge relative to KMC's specific remedial efforts in the two challenged bathrooms (the South Lobby Public Restroom and the Second Floor Surgery Clinic West Unisex Public Restroom). Doc. 21-4, Eyraud Decl. By that date, Eyraud testified, in both bathrooms all operable parts of the soap dispensers, all toilet seat cover dispensers, and all other dispensers were then presently located less than 40 inches from the ground. Doc. 21-4, Eyraud Decl. ¶ 5.

//

About the same two bathrooms, Defendant offers Eyraud's testimony that by August 15, 2015, the interior doors then presently required less than five pounds of pressure to operate. *Id.* at ¶ 5. Regarding the alleged excessive door pressure on the South lobby public restroom and the second floor surgery clinic West public restroom, Eyraud testified that he personally inspected the door by measuring the pressure and the doors meet the ADAAG standard of no more than five pounds per square inch (5 psi). *Id.* at ¶ 9.

In addition, Eyraud offers that since Plaintiff's expert inspection, KMC has surveyed its public restrooms throughout the facility, and any other wall mounted mirrors, soap dispensers, toilet seat cover dispensers, and other dispensers found to be noncompliant have been or are being lowered to less than 40 inches from the ground. KMC is also installing or has installed directional signage to identify the restrooms that comply with all current ADA standards. *See* Doc. 21-4, Eyraud Decl. ¶ 8.

Plaintiff offers no contradictory evidence. Plaintiff merely emphasizes that on April 20, 2015, Eyraud did not have relevant information about ADA compliance or remediation. *See* Doc. 22 at 18-19. However, what Eyraud knew on April 20, 2015 is not relevant to this inquiry. Eyraud's knowledge in April does not preclude him having different, updated knowledge in August. It is not inconsistent for Eyraud to testify in April that he did not know about certain areas of compliance at the facility, then – over a period of four months in his role as KMC's facility manager involved in the instant litigation – to subsequently gain knowledge about the remediation process underway at KMC, and to testify in August 2015 to his personal knowledge about KMC's remedial efforts.

Plaintiff offers rhetoric but fails to offer any competent evidence to suggest that KMC did not take the corrective action described in Eyraud's sworn testimony. It is significant that after Plaintiff's expert's initial investigatory visit, Plaintiff does not claim that anyone on his behalf visited KMC to confirm KMC's reported remediation. Plaintiff offers no contrary measurements of the height of mounted amenities or door pressures. With an apparent lack of diligence and without relevant evidence, Plaintiff does not meaningfully challenge Defendant's evidence that the barriers have been remediated.

The Court finds that Plaintiff's general skepticism about Defendant's evidence is insufficient to create a genuine issue of material fact. *See, e.g., Feezor v. Patterson*, 896 F. Supp. 2d 895, 901 (E.D. Cal. 2012) *aff'd sub nom. Feezor v. HanesBrands Direct, LLC*, 596 F. App'x 558 (9th Cir. 2015) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) ("[M]ere argument does not establish a genuine issue of material fact to defeat summary judgment. A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials in pleadings, but 'must set forth specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e); (other citations omitted)).

Eyraud's testimony about KMC's specific remedial efforts Defendant demonstrates that KMC has made physical changes to the barriers about which Plaintiff complains, rendering them ADA-compliant under even current standards. Courts consistently acknowledge the principle that where a defendant has taken remedial measures that are physical changes to material objects, such changes are likely permanent and, as a result, find that these are not reasonably expected to recur.

*See Kohler v. In-N-Out Burgers*, 2013 WL 5315443, at *7 (C.D. Cal. Sept. 12, 2013) (holding that plaintiff's ADA claim for injunctive relief was moot, reasoning that the defendant had remedied physical problems with the stall, grab bar, a mounted paper towel dispenser, and the exit door); *accord Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054 (E.D. Cal. 2006) (finding that plaintiff's ADA claim for injunctive relief was moot because the defendant had remedied the physical characteristics of the accessible parking spaces, the slope of the spaces, and the absence of signage). Here, Defendant offers uncontroverted evidence of material changes to physical features in the two public restrooms at issue, including changing the height of mounted amenities and the pressure required to operate the doors. Unlike a policy, Defendant's remedial efforts are exactly the kind of physical alterations which courts interpret as unlikely to revert to their former state because, once taken, these physical changes cannot be easily undone.

In sum, Defendant presents evidence from its facilities manager that KMC has remediated the barriers remaining relevant to Plaintiff's claim for injunctive relief. Plaintiff offers no evidence to controvert Eyraud's testimony. Thus Defendant has demonstrated "that there is an absence of evidence to support" Plaintiff's claim that the barriers have not been remediated. *See Celotex*, 477 U.S. at 325. The Court finds that it is "absolutely clear" that Defendant's voluntary physical changes to the mounted amenities and door pressures in both public restrooms about which Plaintiff complains are the kind of alterations which "could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

The Court concludes that Plaintiff's claim under the ADA for injunctive relief is moot.

Plaintiff also brings a second cause of action for violations of the Rehabilitation Act. Doc. 1 ¶¶ 33-39. Defendant moves for summary judgment as to this claim. As the same analysis is applied to Plaintiff's second cause of action as is applied to Plaintiff's first cause of action under the ADA, Plaintiff's second claim fails for the same reasons explained above.

Accordingly, the Court concludes that Defendant is entitled to summary judgment on these federal claims, Plaintiff's first and second causes of action.

//

//

**B.  STATE LAW CLAIM**

**Third Cause of Action: Section 54, California Disabled Persons Act ("CDPA")**

In addition to federal claims, Plaintiff avers that because Defendant violated the ADA, there is also a per se violation of the CDPA. The CDPA, which is codified at California Civil Code section 54, provides that:

> Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places.

Cal. Civ. Code § 54(a).

The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The statute also provides that a district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the [*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)] values 'of economy, convenience, fairness, and comity.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). In deciding whether to exercise supplemental jurisdiction, a court must consider the underlying objective of "most sensibly accommodating the values of economy, convenience, fairness, and comity." *Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 24 F.3d 1545, 1557

(9th Cir. 1994) (internal quotations omitted). A district court need not "articulate why the circumstances of [the] case are exceptional" to dismiss state-law claims pursuant to 28 U.S.C. § 1367(c)(1)-(3). *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478-79 (9th Cir. 1998) (quoting *Exec. Software*, 24 F.3d at 1557).

Here, the Court declines to exercise supplemental jurisdiction over the state law claim because the Court found it appropriate, *supra*, to dismiss all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

## II.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment only as to the first (under Title II) and third (under CDPA) claims, arguing that "the County failed to provide programmatic access inside the medical center that it owns and operates. These inaccessible conditions are discriminatory and render this program inaccessible to wheelchair users in violation of the ADA." Doc. 20-1 at 8:23-26.

Because Defendant has prevailed on summary judgment as to all of Plaintiff's federal claims, either because those claims are moot or barred by Rule 8, and because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, Plaintiff's summary judgment motion is moot. In other words, although Plaintiff could, in theory, obtain a damages award under state law on the basis of a finding that Defendant violated the ADA's standards, the Court has declined to exercise supplemental jurisdiction over any such claim.

## III.   CONCLUSION AND ORDER

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED** and Plaintiff's Motion for Summary Judgment (Doc. 20) is **DENIED**.

**IT IS SO ORDERED**
**Dated: November 19, 2015**

<u>/s/ Lawrence J. O'Neill</u>
**United States District Judge**

28